[No. 15860-8-III.   Division Three.   October 9, 1997.]
LINDA STIMUS, *Appellant*, v. GLEN HAGSTROM, ET AL., *Respondents*.

---

*Michael J. Platts*, for appellant.

*John R. San Fellipo, Jr.*, of *Davis, Arneil, Dorsey, Kight Parlette*, for respondents.

KURTZ, J. — Linda Stimus seeks damages for the injuries she sustained while reroofing the Hagstroms' house when the patio cover she was standing on collapsed causing her to fall. Ms. Stimus's complaint stated two causes of action: (1) a claim based on premises liability, and (2) a claim based on failure to provide a safe place to work. The trial court granted summary judgment in favor of the Hagstroms. Ms. Stimus appeals contending the trial court erred in dismissing her claim based on premises liability. We affirm.

## FACTS

During the severe winter of 1992-93, ice dams formed on the roof of the Hagstroms' home in Wenatchee. The buildup of ice caused water damage to the front of their home in the form of stains on the interior wall. Significantly, the Hagstroms contend there was no visible damage to the rear of the house where the patio cover was attached.

The patio cover was made of corrugated steel attached by metal U-brackets and large wood screws to the ends of the roof's trusses. Fascia boards covered the ends of the trusses. During the winter, Glen Hagstrom and his brother-in-law climbed onto the patio cover to inspect the roof. Each man weighed about 200 pounds and they distributed their weight by standing on a board placed parallel to the roof edge.

Dorothy Hagstrom hired Ms. Stimus, who did business

as Lin's Roofing, and told her about the water damage in the front of the house. Neither of the Hagstroms had observed anything that would give them reason to believe that the patio cover would collapse with one or two people on it. Ms. Stimus inspected the roof and prepared an estimate, which the Hagstroms accepted by signing the estimate.

The accident occurred on September 8, 1993, the second or third day of work, after the front of the house had been reroofed. Ms. Stimus arrived on the job after her work crew had begun removing shingles from the rear of the house. Ms. Stimus and one of her workers were standing on the patio cover when a support gave way and collapsed due to dry rot. Ms. Stimus sprained her ankle in the fall. The worker, Mike Hunt, was apparently uninjured.

Ms. Stimus stated in her affidavit that Mrs. Hagstrom told her after the accident the insurance company would not allow the Hagstroms to fix the water damage in the rear of the house. At her deposition, Ms. Stimus produced some notes of a conversation she had with Mrs. Hagstrom after the accident which read: "Owner built patio. Previous claim. Water damage to the living room inside, front porch inside, ice buildup outside wall between house and patio." Ms. Stimus contends in her affidavit that if she had known about the water damage to the back of the house, she could have prevented her injuries because she would have performed a thorough inspection of the house and the patio supports before she walked on the patio cover.

At the time of the accident, Ms. Stimus had approximately 18 years of experience in the roofing business. She acknowledged at the deposition that she did not see any damage to the roof near the patio cover even after the shingles were removed. Ms. Stimus stated that she looked at the rotted two-by-eight from underneath before she got on the roof and did not see any damage. According to Ms. Stimus, dry rot cannot be seen until it is starting to fall apart. She admits the Hagstroms would not have been able to see the dry rot.

Mr. Hagstrom stated in his affidavit that he was concerned about dry rot in all areas of the roof and that he had instructed Mike Hunt to check for such damage. Mr. Hagstrom further stated insurance adjusters told him that no one could tell what type of damage there was to the underlayment of the roof until the roofing material was removed. Mr. Hagstrom was told by Lin's Roofing the house had three layers of roofing material. Because Lin's was going to remove all three layers of roofing material, Mr. Hagstrom believed Lin's would be in the best position to discover any damage.

Approximately one month after the accident, Ms. Stimus arranged a meeting with Mrs. Hagstrom and asked her to bring the signed estimate with her. Ms. Stimus took the form and added language at the end of the sentence that addressed insurance. The original form stated that Lin's would provide workers' compensation and public liability insurance. Ms. Stimus added the phrase: "unless caused by structural problems." Mrs. Hagstrom stated in her affidavit Ms. Stimus told her she made this change so the Hagstroms' insurance company would pay her medical bills.

Ms. Stimus filed this lawsuit stating: (1) a claim based on premises liability and (2) a claim based on failure to provide a safe place to work. The Hagstroms' filed a motion for summary judgment seeking to dismiss this action. Ms. Stimus filed no response to this motion. At the hearing on the motion, Ms. Stimus's attorney admitted that the Hagstroms did not exercise control over Ms. Stimus and her employees and the court granted summary judgment as to the claim based on failure to provide a safe place to work. The court did not grant summary judgment on the premises liability claim, but granted the Hagstroms leave to make the same motion with at least 17 days' notice to Ms. Stimus. During the hearing, some questions arose as to the meaning of the Hagstroms' fourth affirmative defense. The trial court apparently was giving the Hagstroms the opportunity to file additional documents to clarify the wording of this defense.

In their fourth affirmative defense, the Hagstroms stated:

> As an affirmative defense, Defendant alleges that the Plaintiff changed the terms of the contract dealing with insurance coverage after Defendant warned Plaintiff of *possible* structural problems with the patio roof.

(Emphasis added.) The Hagstroms filed affidavits in support of their second motion for summary judgment which clarify the meaning of this allegation. Mr. Hagstrom stated in his affidavit that:

> The reference to "possible structural problems with the patio roof" contained in our Fourth Affirmative Defense was meant to address the fact that I told an employee by the name of Mike that we wanted Lin's Roofing to check for any damage that may have been caused by the severe winter. When our insurance adjusters came to estimate the cost of repairing the interior water damage at the front of our home, they told us that no one could tell what type of damage there was to the underlayment of the roof until the roofing material was removed. Because Lin's Roofing was going to remove the shingles, Lin's Roofing would be in the best position to tell us whether any of the underlayment was structurally damaged. Because of the ice dam build ups over the previous winter and the fact that, according to Lin's Roofing, we had three layers of roof on our house, we were concerned about possible dry rot to all areas of the roof. We even asked Mike to check for dry rot because we were not sure what was underneath the shingles.

Mrs. Hagstrom explained that the fourth affirmative defense referred to the contract changes made by Ms. Stimus after the accident. Ms. Stimus does not deny her role in changing the language of the contract. She also does not deny that her worker was informed of possible dry rot damage by Mr. Hagstrom.

The trial court granted the Hagstroms' motion for summary judgment and dismissed the remaining claim. Ms. Stimus appeals contending there is a material fact in dispute concerning whether or not the Hagstroms had no-

tice of the damage to the support structure for the patio cover and failed to warn her.

## ANALYSIS

Ms. Stimus contends the Hagstroms had a duty to warn her of the dangerous condition on the premises and that there is an issue of fact as to whether or not the Hagstroms had knowledge of the defect and failed to communicate this information to her. According to Ms. Stimus, the Hagstroms are simultaneously presenting two opposite and conflicting versions of the facts. On one hand, the Hagstroms admitted in their fourth affirmative defense that they warned Ms. Stimus of structural damage to the patio. On the other hand, the Hagstroms argued in support of their motion for summary judgment that they had no knowledge of the defect in the patio supports prior to the time of the accident. Ms. Stimus contends the Hagstroms cannot argue both positions simultaneously and that summary judgment is inappropriate where there is a genuine issue of a material fact.

The court engages in the same inquiry as the trial court when reviewing an order granting summary judgment. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Summary judgment is appropriate if the record before the court shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). All facts and reasonable inferences arising from the facts are to be considered in favor of the nonmoving party and summary judgment is granted only if reasonable minds could reach but one conclusion from the evidence presented. *Ruff*, 125 Wn.2d at 703-04. Once the moving party makes a showing that he is entitled to judgment, the opposing party must come forward with specific facts to establish the existence of a genuine issue for trial. *Bankhead v. City of Tacoma*, 23 Wn. App. 631, 639, 597 P.2d 920 (1979).

■ To establish the elements of an action for negligence, the plaintiff must show: (1) the existence of a duty owed to the plaintiff; (2) breach of that duty; (3) a resulting injury; and (4) a proximate cause between the breach and the injury. *Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996). The threshold determination of whether a duty exists is a question of law. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). Once the legal duty is determined, it is the function of the trier of fact to decide whether the particular harm should have been anticipated and whether reasonable care was taken to protect against the harm. *Iwai*, 129 Wn.2d at 102.

■ Washington has adopted RESTATEMENT (SECOND) OF TORTS § 343 and § 343A as the law regarding the duty of a landowner to a business invitee. *Iwai*, 129 Wn.2d at 95; *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 457, 805 P.2d 793 (1991). Section 343 reads as follows:

Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965). This implies that the possessor of the property will take reasonable care to ascertain the actual condition of the premises and will either make it reasonably safe or give a warning of the condition and its risks. RESTATEMENT, § 343 cmt. d.

■ The landowner's responsibility to an invitee is based

upon the invitee's expectation that the premises have been made safe for the invitee's visit. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 53, 914 P.2d 728 (1996). The extent of the duty to inspect is dependent upon the circumstances and the relationship between the landowner and the invitee. Comment "e" reads as follows:

> e. *Preparation required for invitee.* In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance. One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors. On the other hand, one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors. So too, one who goes on business to the executive offices in a factory, is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety. If, however, on some particular occasion, he is invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory.

RESTATEMENT, § 343 cmt. e. In limited circumstances, RESTATEMENT, § 343A creates a duty to protect invitees even from known or obvious dangers. This occurs when a landowner "should anticipate the harm despite such knowledge or obviousness." RESTATEMENT, § 343A(1).

The issue in this case is the nature of the duty owing from the Hagstroms as the possessors of the property to Ms. Stimus and her workers as business invitees on the property for the purpose of roofing the Hagstroms' house. In other words, what was the extent of the duty the Hagstroms owed to their roofers in terms of the inspection the Hagstroms were required to perform and the extent of the warning, if any, that the Hagstroms were required to give the roofers related to any defects?

When applying the knowledge requirements of RESTATE-MENT (SECOND) OF TORTS § 343, Washington law requires plaintiffs to show the landowner had actual or constructive notice of the unsafe condition. *Iwai*, 129 Wn.2d at 96. "The notice requirement insures liability attaches only to owners once they have become or should have become aware of a dangerous situation." *Iwai*, 129 Wn.2d at 96-97. There are two exceptions to the notice requirement; both are inapplicable here. Under the first exception, the plaintiff need not prove notice if the unsafe condition is reasonably foreseeable in the nature of the business or the mode of operation. *Wiltse*, 116 Wn.2d at 461. The second exception applies when the owner caused the hazardous condition. *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983).

Ms. Stimus does not contend the Hagstroms had knowledge of the dry rot. Rather, Ms. Stimus contends the Hagstroms failed to fulfill the duty owed to her as a business invitee when they failed to inform her of the water damage in the rear of the house near the patio cover. Ms. Stimus contends there is an issue of fact in that she contends Mrs. Hagstrom told her about water damage to the rear of the house and the Hagstroms contend there was no such damage. According to Ms. Stimus, if she had known about this damage prior to the commencement of the roofing job, she would have checked more carefully for dry rot in this area.

Ms. Stimus ignores the fact that Mr. Hagstrom had already warned the roofers about potential dry rot in the wood under the shingles on the roof. There is no dispute that Mr. Hagstrom had warned one of the workers about the dry rot. A dispute concerning the existence of water damage in the rear of the house is not material in light of the warning already given to the roofers by Mr. Hagstrom. Furthermore, while Ms. Stimus complains of possible water damage there is nothing in her affidavit establishing a connection between the water damage and the dry rot or establishing that the Hagstroms had actual or constructive notice of the dry rot.

Ms. Stimus bases her argument on the lack of warning given to her rather than any failure of the Hagstroms to inspect the premises and uncover the dry rot themselves. She admits the dry rot was not visible to the eye and that she, herself, did not see any problem when she looked at the support prior to climbing on the patio cover. As property owners seeking to have a damaged roof repaired, the Hagstroms had no duty to take the roof apart themselves in order to determine whether or not dry rot was present.

The duty owed by the Hagstroms to the roofers also must be examined in light of the expectations and knowledge of the parties. One case examining the notice issue denied recovery where it was shown that the decedent fireman had superior knowledge of the dangerous condition caused by a fire on a pier constructed of creosoted timber when compared to the knowledge of the owner of the pier and its employees. *Strong v. Seattle Stevedore Co.*, 1 Wn. App. 898, 904, 466 P.2d 545, *review denied*, 77 Wn.2d 963 (1970). Here, the roofers were in the position of having superior knowledge concerning the roof and the implications of the Hagstroms' statements about dry rot. The duty owed to correct or warn concerning hidden dangers extends only to dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known. *Golding v. United Homes Corp.*, 6 Wn. App. 707, 711, 495 P.2d 1040 (1972).

In summary, landowners who invite individuals with superior knowledge onto their property to make repairs on the property should not be required to know of defects the repairs were intended to discover and remedy or to anticipate defects within the expertise of the experts. Given the expertise of the roofers here, the Hagstroms fulfilled their duty when they warned the roofers about the potential dry rot. The question as to whether or not the Hagstroms informed Ms. Stimus of water damage to the rear of the house is immaterial in view of the scope of the warning given.

The judgment of the trial court is affirmed.

SCHULTHEIS, A.C.J., and BROWN, J., concur.

Review denied at 134 Wn.2d 1026 (1998).