31 P.3d 684 (2001)
Tibor MUCSI and Andre Kruppa, husband and wife, and their marital community, Petitioners,
v.
GRAOCH ASSOCIATES LIMITED PARTNERSHIP # 12,[] a Washington corporation, dba Keeler's Corner Apartment Homes, Respondent.
No. 70153-9.
Supreme Court of Washington, En Banc.
Argued March 20, 2001.
Decided September 27, 2001.
*685 Alan F. Hall, Edmonds, for Petitioners.
*686 Barrett & Worden, PS, M. Colleen Barrett, Gregory S. Worden, Seattle, for Respondent.
CHAMBERS, J.
Tibor Mucsi seeks review of an unpublished Court of Appeals decision affirming dismissal of his negligence complaint against Graoch Associates Limited Partnership #11, the owner of an apartment complex in which Mucsi resided. Mucsi sued Graoch after he slipped and fell on ice outside the apartment complex clubhouse. Although the main entrance to the clubhouse had been cleared of accumulated ice and snow, the side exit used by Mucsi that day had not. At the close of evidence, Graoch moved the trial court to dismiss Mucsi's case. The trial court granted the motion based upon Mucsi's failure to present sufficient evidence that Graoch had breached its duty. Therefore, the issue before this Court is whether Mucsi presented sufficient evidence to establish the landowner breached its duty. We hold the evidence was sufficient and reverse and remand for a trial.

STATEMENT OF THE CASE
Keeler's Corner Apartment Homes is a large apartment complex in Snohomish County that is owned by Graoch Associates Limited Partnership #11. On Friday, January 26, 1996, the area experienced snowfall, which according to the manager of the apartment complex, was sufficient to close a local mall. Minor snowfall occurred on Saturday, as well.
On the afternoon of Sunday, January 29, 1996, Tibor Mucsi, his wife, sister and brother-in-law walked through the entrance of the Keeler's Corner clubhouse. At that time, Mucsi and his wife were tenants of Keeler's Corner and were taking their guests to the clubhouse to view the facility. Though it was snowing outside, Mucsi noticed there was no accumulated snow or ice on the sidewalk in front of the clubhouse entrance. After approximately 20 minutes, the group walked out of the clubhouse through a side exit rather than using the front door they had entered. Mucsi and his wife often used the clubhouse and were accustomed to using the side exit when leaving the facility. Both had seen others use the side exit, as well. There was no indication the side exit was to be used only for emergencies and no one had ever told Mucsi or his wife not to use the side exit. Before Mucsi opened the door, which was made of glass, he could see the area outside the side exit was covered with snow and ice. He had also seen footprints in the snow and noticed snow had been swept to the side by the door, indicating others had used the side exit in spite of the snow. The snow and ice had covered the ground in that area for at least three days. Although Mucsi's wife and their guests exited the clubhouse without incident, Mucsi slipped and fell, hitting his head on a wall and landing on his arm. Mucsi sustained injury to his neck and arm; he is an artist and claims serious injuries.
In June 1997, Mucsi filed a complaint for damages, contending the landowner negligently failed to make safe the side exit of the clubhouse. At trial, Patricia Bateman, the resident manager at Keeler's Corner, testified it was her and another's duty to see that ice was removed and the common areas made safe. She further testified by the afternoon of Mucsi's fall, the maintenance crew at Keeler's Corner had prioritized its efforts, focusing its snow removal efforts on main walkways. Snow and ice had been removed from only the sidewalks, the stairs and the front entrance of the clubhouse. There was no inspection or removal of snow from the side exit, despite sufficient time to do so. In fact, Bateman testified she had considered the side exits at the clubhouse to be emergency exits and, therefore, had no reason to expect tenants would use the exits. On the other hand, Mucsi introduced evidence that while one could not enter through the side doors, there was an exit sign over the side exit and tenants routinely used the exit. No effort was made to temporarily close the side exits pending snow removal. At the close of evidence, Graoch moved for judgment as a matter of law. The trial court granted this motion, concluding Mucsi produced no evidence showing Graoch breached any duty of care owed to him. Specifically, the trial court stated:
So we come to whether or not, under the circumstances of this storm, and under the *687 circumstances of how much clearing had been done, whether or not this ramp should have been cleared.
As I indicated before, it was an exit, it was not an entrance. And although people used it to leave, and apparentlywell, on that particular day there were very few people coming into the place, let alone leaving, there is no indication that the defendant should have been on notice, given the fact that there was so much snow around and that so many sidewalks were cleared, and people couldn't be reasonably expected to be walking through the snow, when they had cleared sidewalks to go.
There being no indication that the defendant should have known that somebody was using that ramp, they were not put on notice that people were going to voluntarily expose themselves to that danger, and therefore did not breach their duty of care.[[1]]
Accordingly, the trial court dismissed Mucsi's complaint with prejudice. The Court of Appeals affirmed and we granted review.

QUESTIONS PRESENTED
1. Whether the owner of an apartment complex, who had actual or constructive knowledge of accumulated snow and ice hazards in common areas, had a duty to exercise reasonable care to prevent injuries sustained by a tenant due to a slip and fall in a common area.
2. Whether a tenant's awareness of accumulated snow and ice in a common area necessarily precludes landowner liability.
3. Whether the record supports a reasonable inference that the landowner's duty was breached.

ANALYSIS
1. Landowner's Duty to Invitees
To establish negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996). The existence of legal duty is a question of law. Id.
The common law classification of persons entering upon real property determines the scope of the duty of care owed by the owner or occupier of that property. Degal, 129 Wash.2d at 49, 914 P.2d 728. A residential tenant is an invitee. McMann v. Benton County, Angeles Park Communities, Ltd., 88 Wash.App. 737, 741, 946 P.2d 1183 (1997). Here, Mucsi's invitee status is uncontested.
2. Landowner's Duty to Safely Maintain Premises
A landowner has an affirmative duty to maintain common areas in a reasonably safe condition. Iwai v. State, 129 Wash.2d 84, 91, 915 P.2d 1089 (1996). "The general rule in the United States is that where an owner divides his premises and rents certain parts to various tenants, while reserving other parts such as entrances and walkways for the common use of all tenants, it is his duty to exercise reasonable care and maintain these common areas in a safe condition." Geise v. Lee, 84 Wash.2d 866, 868, 529 P.2d 1054 (1975).
[A tenant] "`enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but also in inspection to discover their actual condition and any latent defects, followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances.'"
Degel, 129 Wash.2d at 53, 914 P.2d 728 (emphasis added) (quoting Jarr v. Seeco Constr. Co., 35 Wash.App. 324, 327, 666 P.2d 392 (1983) (quoting Restatement (Second) of *688 Torts § 343 cmt. b (1965))). Under the Restatement (Second) of Torts, a landowner is subject to liability for harm caused to his tenants by a condition on the land, if the landowner (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to tenants; (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect the tenant against danger. Restatement (Second) of Torts § 343 (1965). "Reasonable care requires the landowner to inspect for dangerous conditions, `followed by such repair, safeguards, or warning as may be reasonably necessary for [a tenant's] protection under the circumstances.'" Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 139, 875 P.2d 621 (1994) (quoting Restatement (Second) of Torts § 343, cmt. b. (1965)).
3. Accumulated Snow and Ice in Common Areas
An accumulation of snow or ice is analyzed under the general rules of a landowner's duty to invitees. Maynard v. Sisters of Providence, 72 Wash.App. 878, 882, 866 P.2d 1272 (1994). This duty extends to the removal of snow and ice and is based upon the tenant's expectation that the premises have been made safe for the tenant's use. Degel, 129 Wash.2d at 53, 914 P.2d 728. Prior to 1975, however, this was not the case in the state of Washington.
a. Historical Overview: Massachusetts Rule vs. Connecticut Rule
In the 1975 decision of Geise, this Court addressed whether a landowner had a duty to exercise reasonable care in providing safe common areas, free from dangerous accumulations of snow and ice. 84 Wash.2d at 868, 529 P.2d 1054. At that time, there was a distinct division in case law among jurisdictions regarding the removal of accumulated snow and ice. Id. at 869, 529 P.2d 1054. This distinction may be summarized as the Massachusetts rule versus the Connecticut rule.
The Massachusetts rule, otherwise known as the "natural accumulation rule," stems from the case of Woods v. Naumkeag Steam Cotton Co., 134 Mass. 357 (1883). Under that rule, a landowner had no duty to protect invitees from conditions caused by natural accumulations of snow and ice. Id. The premise of this rule is based upon the notion that landowners would be greatly burdened if it were held otherwise. Geise, 84 Wash.2d at 869, 529 P.2d 1054. The Massachusetts rule was adopted by this Court in 1910, but was later rejected in the 1975 Geise decision. See Oerter v. Ziegler, 59 Wash. 421, 109 P. 1058 (1910); see also Schedler v. Wagner, 37 Wash.2d 612, 225 P.2d 213, 230 P.2d 600 (1950). It was then this Court adopted the Connecticut rule.
Contrary to the Massachusetts rule, the Connecticut rule announced in Reardon v. Shimelman, 102 Conn. 383, 128 A. 705 (1925) placed the burden on the landowner:
The duty of the landlord [is] to exercise reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches, the fact that a particular danger arose from the fall of snow or the freezing of ice can afford no ground of distinction. Indeed, the causes which are at work to produce it are no more natural causes than are those which, more slowly, bring about the decay of wood or the rusting of iron. To set apart this particular source of danger is to create a distinction without a sound difference.
Id. at 388, 128 A. 705; see also Geise, 84 Wash.2d at 869, 529 P.2d 1054. Adoption of the Connecticut rule stemmed from "judicial recognition of changing conditions within the ever expanding boundaries of the landlord-tenant relationship." Id. at 870, 529 P.2d 1054.
"We believe that today a landlord, armed with an ample supply of salt, sand, scrapers, shovels and even perhaps a snow blower, can acquit himself quite admirably as he takes to the common passageways to do battle with the fallen snow, the sun-melted snow now turned to ice, or the frozen rain. We fail to see the rationale for a rule which grants a seasonal exemption from liability to a landlord because he has failed *689 to take adequate precautions against the hazards that can arise from the presence of unshoveled snow or unsanded or salt-free ice found in the areas of his responsibility but yet hold him liable on a year-round basis for other types of defects attributable to the workings of mother nature in the very same portions of his property.... To draw such a distinction ... `create[s] in the law another of those strange anomalies which, once created, live on to haunt successive legal generations.'" Id. (quoting Fuller v. Housing Auth., 108 R.I. 770, 773-74, 279 A.2d 438 (1971) (quoting Langhorne Road Apartments, Inc. v. Bisson, 207 Va. 474, 477, 150 S.E.2d 540 (1966))). Thus, a landowner must exercise reasonable care in keeping all common areas reasonably safe from hazards likely to cause injury, including snow and ice. Id. at 871, 529 P.2d 1054.
b. Connecticut Rule Reaffirmed in Iwai v. State of Washington
More than 20 years following the Geise decision, this Court again addressed a landowner's duty to exercise reasonable care in providing safe common areas, free from dangerous accumulations of snow and ice. In Iwai, the plaintiff fractured her wrist when she slipped and fell on snow and ice left in the parking lot of the Washington Employment Security Department. Iwai, 129 Wash.2d at 87, 915 P.2d 1089. Two days before the plaintiff fell, the parking lot had been plowed; however, there remained a light dusting of new snow and the parking lot had not been sanded. Id. Citing the Massachusetts rule with approval, the trial court dismissed the plaintiff's claim, holding a landowner has no duty to protect against hazardous conditions caused by accumulated snow and ice. Id. at 90, 915 P.2d 1089. The Court of Appeals likewise applied the Massachusetts rule, but reversed the decision of the trial court, holding there was a material issue of fact as to whether the State was negligent for having plowed without thereafter applying sand to the plowed areas. Id.
This Court affirmed the decision of the Court of Appeals, but rejected application of the Massachusetts rule, previously abandoned in Geise. Iwai, 129 Wash.2d at 95, 915 P.2d 1089. Following the precedent set forth in Geise, this Court held that landowners are responsible for "`exercis[ing] reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches,'" including danger arising from the fall of snow or the freezing of ice. Id. at 91, 915 P.2d 1089 (quoting Reardon, 102 Conn. at 388, 128 A. 705).
"[M]ulti-family dwelling complexes have become a major commercial enterprise, which directly affects the lives of literally thousands of people who must rely on this style of living for shelter.... [T]he landlord c[an] not passively refrain from negligent conduct...." Geise, 84 Wash.2d at 871, 529 P.2d 1054 (citing McCutcheon v. United Homes Corp., 79 Wash.2d 443, 447, 486 P.2d 1093 (1971)). Notwithstanding this conclusion, the Court in Geise emphasized the landowner is not a guarantor of safety. Id. To prevail, a plaintiff must prove (1) the landowner had actual or constructive notice of the danger, and (2) the landowner failed within a reasonable time to exercise sensible care in alleviating the situation. Id.
4. Notice or Foreseeability
To prove constructive notice, the plaintiff must prove the specific unsafe condition had "`existed for such time as would have afforded [the landowner] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" Iwai, 129 Wash.2d at 96, 915 P.2d 1089 (quoting Smith v. Manning's, Inc., 13 Wash.2d 573, 580, 126 P.2d 44 (1942)). This notice requirement insures liability attaches once the landowners have become or should have become aware of a dangerous situation. Id. at 96-97, 915 P.2d 1089. Continuing its analysis in Iwai, this Court also determined, where the plaintiff is unable to establish actual or constructive notice, the plaintiff may present evidence to establish the unsafe condition was reasonably foreseeable. Id. at 100-01, 915 P.2d 1089.
5. Tenant's Knowledge of the Hazardous Condition Does Not Necessarily Preclude Landowner Liability
This Court has recognized an invitee's awareness of an unsafe condition does not necessarily preclude a landowner of liability:

*690 A possessor of land is not liable to his [or her] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
Iwai, 129 Wash.2d at 94, 915 P.2d 1089 (citing Restatement (Second) of Torts § 343A(1) (1965)). In the Iwai case, it was observed "Mrs. Iwai may have known about the ice in the parking lot, but if Employment Security `c[ould] and should [have] anticipate[d] that the dangerous condition w[ould] cause physical harm to the invitee notwithstanding its known or obvious danger,' then section 343A may impose liability." Id. (alterations in original). Liability may manifest where the landowner has reason to expect the tenant will encounter the known or obvious danger because to a reasonable person in that position the advantages of doing so would outweigh the apparent risk. Id. (citing Restatement (Second) of Torts § 343A cmt. f (1965)).
6. The Landowner is Not a Guarantor
The duty of a landowner is one of reasonable care. Geise, 84 Wash.2d at 868, 529 P.2d 1054. Therefore, a landowner is not a guarantor of safetyeven to an invitee. Id. at 871, 529 P.2d 1054. Generally, a landowner is not liable to an invitee for dangers that are obvious. Id. Where the hazard is the result of heavy snowfall, the landowner is entitled to reasonable time to alleviate the situation. Fuller, 108 R.I. at 770-74, 279 A.2d 438. In this instance, the trial court focused on the landowner's duty; however, the invitee also has a duty to exercise reasonable care. See generally Maynard, 72 Wash.App. 878, 866 P.2d 1272 (comparative fault doctrine).
The opportunity of a landowner to take corrective action has been examined in several cases.
In Maynard, a hospital visitor brought a negligence action against Providence Hospital after he had slipped and fallen on ice and snow in the hospital visitors' parking lot. Id. at 880, 866 P.2d 1272. While at the hospital, Maynard had observed snow and ice conditions over the course of two days, including the day of his fall. Id. at 879, 866 P.2d 1272. That day, the parking lot had not been cleared of ice and snow, nor did he notice the hospital taking any measures to clear the ice and snow. Id. Earlier, however, Maynard had seen sanding taking place in the parking lot reserved for doctors and hospital staff. Id. In an attempt to leave the hospital, Maynard slipped and fell on ice in the hospital parking lot, resulting in his injury. The Court of Appeals found a reasonable inference Providence had failed to use reasonable care because (1) the snow and ice had covered the ground for four days; (2) the hospital had sanded the parking lot used by doctors and staff, but not the lot used by visitors; and (3) the conditions in the visitors' lot were evident the day the plaintiff fell. Id. at 883-84, 866 P.2d 1272.
Similarly, in Leonard v. Pay'n Save Drug Stores, 75 Wash.App. 445, 880 P.2d 61 (1994), the plaintiff, a store customer, slipped and fell on an ice-covered private sidewalk outside a store. Prior to the plaintiff's fall, a winter storm had deposited snow on the sidewalk, and over several days the snow became hard and icy. Id. at 446, 880 P.2d 61. Pay'n Save did not remove the snow or alter its condition. Id. The day of the incident, the only way in and out of the store was across the ice-covered sidewalk. Id. The plaintiff entered the store without incident, but on her way out, slipped and fell, and was injured. Id. The Court of Appeals determined a jury could reasonably infer Pay'n Save failed to exercise reasonable care and, therefore, breached its duty because (1) the snow had been on the ground for four or five days, and it had become hard and icy; (2) the store was open for business, and the sidewalk outside was regularly used by customers some carrying packages in their arms; and (3) the sidewalk was a relatively small area and, thus, should have been easy to safely maintain. Id. at 451-52, 880 P.2d 61.
In support of its position, Respondent relies upon Ford v. Red Lion Inns, 67 Wash.App. 766, 840 P.2d 198 (1992). In that case, Ford worked for a company that had contracted with the Red Lion to provide a designated parking area for its company vehicles. Id. at 768, 840 P.2d 198. The day of the *691 incident, Ford noticed portions of the parking area were covered with ice, some were covered with snow and others were bare and wet. Id. While walking from his vehicle to another area in the parking lot to remove some barricades, he fell and was injured. Id.
Ford brought suit against the Red Lion for negligence and when Red Lion sought summary judgment, Ford failed to present any evidence that Red Lion had breached its duty but relied only on the fact of accumulated ice and snow. Id. at 773, 840 P.2d 198. A possessor or owner of land generally is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them. When grounding a claim on the exception provided by the Restatement (Second) of Torts § 343 (1965), a claimant should be prepared to come forward with some evidence that the landowner failed to act reasonably under the circumstances. Ford, 67 Wash.App. at 773, 840 P.2d 198. Unlike Ford, Mucsi presented extensive evidence at trial.

SUFFICIENCY OF EVIDENCE
Washington case law places the burden on landowners to exercise reasonable care to maintain common areas in a safe condition. The evidence presented in this matter supports an inference that all of the exits to the clubhouse might be used and that the landowner had actual knowledge that accumulations of snow and ice persisted on the walkways from those exits. Washington has adopted the Restatement (Second) of Torts § 343 (1965), which places a duty of reasonable care on a landowner for a known risk if the owner should expect that the tenants will fail to protect themselves against it. Although in dispute, there is evidence Graoch had two or three days after the snow stopped to take corrective action. Graoch did not, nor does it appear that it intended to, clear the walkways leading from the side exits of the clubhouse. The evidence suggests the maintenance crew at Keeler's Corner had available snow and ice melting granules that went unused on the side exits.
Therefore, when viewed in the light most favorable to Mucsi, as the jury must, Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997), there is sufficient evidence to proceed to the jury. We reverse and remand for a full trial on merits. The jury may deliberate as to whether Keeler's Corner breached its duty to its tenant, as well as whether Mucsi breached his duty to exercise reasonable care under the circumstances.

CONCLUSION
A landowner or possessor is not a guarantor but owes a duty to an invitee to exercise reasonable care to maintain common areas in a safe condition. Degel, 129 Wash.2d at 53, 914 P.2d 728. The landowner or possessor has a duty with respect to conditions on the land if the owner (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to tenants; and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it. Restatement (Second) of Torts § 343 (1965). This Court has adopted the Connecticut rule, which requires a landowner to exercise reasonable care to keep all common areas reasonably safe from hazards likely to cause injury, including the removal of ice and snow. Geise, 84 Wash.2d at 871, 529 P.2d 1054. The fact a tenant has knowledge of the hazardous condition does not, in itself, relieve the landowner or possessor of land of that duty. Iwai, 129 Wash.2d at 94, 915 P.2d 1089. There must be evidence of actual or constructive notice or foreseeability, and a reasonable time to alleviate the situation. Id. Mucsi has presented sufficient evidence, and when all inferences are viewed most favorably to him, the case must be submitted to the jury. Accordingly, we reverse and remand for trial.
ALEXANDER, C.J., SMITH, JOHNSON, IRELAND, BRIDGE and OWENS, JJ., concur.
MADSEN, J. (dissenting).
In general, a possessor of land does not have a duty to protect a tenant from dangerous conditions that are "known or obvious." An exception to this rule exists where the *692 possessor should anticipate the harm despite the knowledge and dangerousness of the condition. Although the majority recites these relevant principles, it never applies them. Instead, it announces, and then applies, an exceedingly broad rule of liability. The majority's unfortunate failure to follow settled tort principles effectively eliminates the general rule that known or obvious dangers do not give rise to liability. Despite protestations to the contrary, the result of the majority's decision is that the possessor of land becomes the guarantor of the tenant's safety.
I would apply the settled tort principles to which this court has previously adhered. There is no evidence in this case that the landlord, Graoch Associates Limited Partnership #11, had any reason to anticipate that to a reasonable person in Mr. Tibor Mucsi's position the advantages of using the side door outweighed the apparent risk posed by the known or obvious dangerous snow covered walkway. Therefore, under heretofore-settled law, Graoch owed no duty to clear off the walkway leading off the side door.

Analysis
This court held in Tincani v. Inland Empire Zoological Society, 124 Wash.2d 121, 139, 875 P.2d 621 (1994) that Restatement (Second) of Torts § 343A(1) (1965) "is the appropriate standard for duties to invitees for known or obvious dangers." Section 343A(1) states: "A possessor of land is not liable to ... invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." This section states both the general rule that a possessor of land owes no duty to protect invitees from known or obvious conditions, and the exception defining when a duty arises despite the known or obvious nature of the condition.
Here, the condition on the land causing harm was the snow covered walkway. The danger was both known and obvious. The uncleared snow was visible through the glass door through which Mr. Mucsi exited the community center at his apartment complex. That snow may be slippery is obvious, and indeed Mr. Mucsi testified that he knew this.
The exception to the general rule, that a possessor "`should anticipate the harm despite such knowledge or obviousness,'" Restatement (Second) of Torts § 343A(1), applies in "limited circumstances." Tincani, 124 Wash.2d at 139, 875 P.2d 621. The Restatement describes the limited circumstances under which a possessor has reason to expect harm. These include where the invitee's attention may be distracted so that the invitee does not discover what is obvious, or where the invitee will forget what he or she has discovered or failed to protect against it, and where "the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A cmt. f (1965) (emphasis added).
The question whether a duty existed in this case depends upon whether there was sufficient evidence of "foreseeable, reasonable advantages from encountering the danger." Tincani, 124 Wash.2d at 140, 875 P.2d 621; see Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 50, 914 P.2d 728 (1996) (a duty to use reasonable care exists to protect tenants from unreasonable risks which are not known or obvious, and "[a]n additional duty would exist if the landlord should have anticipated the harm despite the tenant's knowledge of the danger or despite the obvious nature of the danger" (emphasis added)). The threshold question of whether a duty is owed is a question of law for the courts, Pedroza v. Bryant, 101 Wash.2d 226, 228, 677 P.2d 166 (1984), though factual determinations may be necessary to resolving the question. The duty issue in this case necessarily requires assessment of the facts relative to whether Graoch had reason to anticipate the harm because to a reasonable person the advantages of going out the side door would outweigh the apparent risk of slipping in the snow.[1]
*693 There is no evidence in the record of any advantage to Mr. Mucsi of using the side door to exit the community center that would outweigh the risk of slipping and falling. The only evidence concerning why he used that exit is that he had routinely done so before, and that he saw footprints and door-swept snow indicating someone else had used it after the snowfall. While the side entrance opened onto plainly visible, uncleared snow, the main entrance to the community center opened onto cleared walkways, as Mucsi knew because he entered through that door. There is simply nothing in the record giving rise to an inference that there was some advantage to exiting through the side door that outweighed the risk of harm.
This case thus stands in stark contrast to Maynard v. Sisters of Providence, 72 Wash.App. 878, 866 P.2d 1272 (1994), where the court addressed the exception to the known or obvious danger doctrine. The defendant hospital had cleared parking lots for staff and doctors, but had not for visitors. Plaintiff was injured when, after he could not get his car to move, he started back to the hospital for sand (and tried to help another stranded driver on the way). The court concluded that the hospital should have reasonably anticipated that its visitors would want to go home, and noted that the visitor's options were limited to abandoning his car and walking, calling a taxi, or remaining at the hospital until conditions changed. Maynard, 72 Wash.App. at 884, 866 P.2d 1272. The court concluded: "Under these circumstances, a reasonable person might well confront the risk of traversing the parking lot to obtain sand" for traction. Id.
Here, the landlord would certainly anticipate that tenants who entered the community center would leave, but would not have reason to anticipate that they would leave through a side door onto an uncleared walk when the main door opened onto a cleared walk. Unlike the plaintiff in Maynard, Mucsi had an easy, readily available option to avoid encountering the risk.
There is no evidence justifying the majority in holding that a duty of care was owed to Mr. Mucsi given the known and obvious danger.
Instead of following and applying the familiar principles discussed here, the majority instead focuses on the foreseeability that tenants would use the side door to exit and the availability of time and resources to clear the walkways to eliminate the danger. Whether tenants had used the side exit before is not relevant to whether a reasonable person would think the advantages of using the side exit outweighed the risk of harm presented by the snowy walkway. Put another way, the foreseeability of use of the door by the tenants in general is not the right inquirythe right inquiry involves the "foreseeable, reasonable advantages from encountering the danger." Tincani, 124 Wash.2d at 140, 875 P.2d 621. As to the availability of time and resources to clear the walkway, that is completely irrelevant if there were no duty to clear the walkway in the first place.
The majority replaces the tort principles adopted and recognized in Tincani and Degel with a new and unprecedented rule of tort law where known or obvious dangers are involved. The majority concludes that if the landlord has actual or constructive notice or foreseeability of the hazardous condition, and there is a reasonable time to alleviate the situation, then the fact that a tenant has knowledge of the condition does not relieve the landowner of the duty to keep common areas reasonably safe from hazards likely to cause injury. Majority at 19. The majority improbably cites Iwai v. State, 129 Wash.2d 84, 94, 915 P.2d 1089 (1996), for this rule.
Iwai says no such thing. It instead states and follows the same rules that are stated in Tincani and Degel and applied in this dissent. The court in Iwai quoted section 343A of the Restatement, "Known or Obvious Dangers," cited both Tincani and Degel, and then observed that while "Mrs. Iwai may have known about the ice in the parking lot... if [the possessor of land] `c[ould] and should [have] anticipate[d] that the dangerous condition w[ould] cause physical harm to the invitee notwithstanding its known or obvious *694 danger,' then section 343A may impose liability." Iwai, 129 Wash.2d at 94, 915 P.2d 1089 (emphasis added) (alterations in original) (quoting Restatement (Second) of Torts § 343A cmt. f (1965)). The court continued its analysis by noting that "such anticipation may be found `where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the advantages of doing so would outweigh the apparent risk.'" Id. Thus, the analysis in Iwai is completely consistent with Tincani and Degel and with the general rule and exceptions laid out in Restatement (Second) of Tort § 343A. In its conclusion, the majority misstates, and departs from, that analysis.
The majority has announced an exceedingly broad rule of liability, disregarding the known or obvious danger doctrine, and has made the landlord the guarantor of a tenant's safety.
In the end, the majority's opinion removes the bar to liability that the known or obvious danger doctrine generally poses. While there is an exception to the general rule, the majority does not engage in a proper analysis to determine whether it applies here. In fact, the exception does not apply. Mr. Mucsi was well able to, and did, see the snowy, uncleared walkway. He knew that the front walkway had been cleared. He knew that snow is sometimes slippery. He knew, and a reasonable person in his position would have known, of the danger, and there is no question that it was obvious. Neither Mr. Mucsi nor other witnesses offered any evidence that would provide a reason for the landlord to have anticipated that to a reasonable person in Mr. Mucsi's position there were advantages to going out the side door which outweighed the risk of harm.
I would hold that Graoch had no duty to clear the snow from the walkway leading off the side door, and therefore would affirm the Court of Appeals.
SANDERS, J., concur.
NOTES
[] The # 12 is an incorrect designation; therefore, we will refer to the Respondents using # 11, the proper company designation.
[1] Partial Tr. of Proceedings, Trial, Mot. to Dismiss at 23-24
[1] The trial court granted Graoch's motion for judgment as a matter of law. See CR 50(a)(1). Such a motion should be granted only if there is no evidence or reasonable inferences from the evidence that would sustain a verdict in favor of the moving party. Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 180, 876 P.2d 435 (1994).