# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFF MCGEE, | No. 50046-9-II |
| Appellant, | |
| v. | |
| DAN GRAZIANO and JOYCE FARLEY GRAZIANO, husband and wife, and the marital community composed thereof; ERIC STROH, an individual; and EDJ PROPERTIES, LLC, a Washington limited liability company. | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — This case arises from a negligence action on the basis of landowner liability and a failure to comply with the Washington Industrial Safety and Health Act (WISHA). Jeff McGee appeals from the trial court's order granting summary judgment to Dan Graziano, Joyce Farley Graziano, Eric Stroh, and EDJ Properties, LLC (EDJ).

We conclude that McGee has not raised a genuine issue of material fact and affirm the trial court's summary judgment order.

## FACTS

Dan Graziano, Joyce Farley Graziano, and Eric Stroh are the governors of EDJ.[1] Stroh owned rental property on Bryan Avenue in Bremerton managed by the Grazianos. McGee has previously worked on houses for Dan Graziano.

---

[1] RCW 23.95.105(12)(c).

In early November 2015, McGee contracted with the Grazianos to rip up the carpet, tack strips, and padding in the Bryan Avenue house in exchange for $300. McGee and his girlfriend completed the work, swept the floor, and removed the carpet, tack strips, and padding from the house. They left all the removed materials in the driveway.

Later in November, McGee made another arrangement with the Grazianos regarding the Bryan Avenue property. This time, McGee was to patch a crack in the ceiling, paint, and install trim boards in the house in exchange for $2,500 and the right to live there while performing the work. McGee and his girlfriend moved into the house around Thanksgiving and began the work. They continued working through December. CP at 50. McGee stated in a declaration that it was his "understanding that Defendant Farley had hired another person, George Armitage, to finish the hardwood floors. He was supposed to clean them and sand them and prepare the floor for finishing. Mr. Armitage was in and out of the house for several days in December." Clerk's Papers (CP) at 49.

On December 21, McGee stepped on a carpet staple protruding from the floor of the living room. The staple punctured his shower shoe and penetrated his toe. The injury developed an infection that resulted in amputations of McGee's foot and leg.

On June 16, 2016, McGee filed his first amended complaint against the Grazianos, Stroh, and EDJ, alleging that their negligence caused his injuries. He alleged that the defendants owed him a duty "to adequately maintain and/or inspect the condition" of the premises "so as to prevent injury to invitees" such as himself. CP at 70. He further alleged that they had a duty to warn him of the unsafe condition and "otherwise exercise reasonable care to prevent injury" to him. CP at 70.

On November 3, the defendants jointly moved for summary judgment. They claimed that none of them breached any duty they owed McGee and that he had assumed the risk of any injuries he sustained. The superior court granted their motion. McGee appeals.

ANALYSIS

I.    STANDARD OF REVIEW

We review an order for summary judgment de novo, performing the same inquiry as the trial court. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). In doing so, we draw "all inferences in favor of the nonmoving party." *U.S. Oil & Refining Co. v. Lee & Eastes Tank Lines, Inc*, 104 Wn. App. 823, 830, 16 P.3d 1278 (2001). "Summary judgment is proper if the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *U.S. Oil & Refining Co.*, 104 Wn. App. at 830.

II.    NEGLIGENCE

A.    LEGAL PRINCIPLES

In an action for negligence, a plaintiff must prove four basic elements: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). "The threshold determination of whether a duty exists is a question of law." *Degel*, 129 Wn.2d at 48. The degree of duty a landowner owes to persons on the land "is governed by the entrant's common law status as an invitee, licensee or trespasser." *Degel*, 129 Wn.2d at 49.

"'An invitee is either a public invitee or a business visitor.'" *Thompson v. Katzer*, 86 Wn. App. 280, 284, 936 P.2d 421 (1997) (quoting *McKinnon v. Wash. Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 650, 414 P.2d 773 (1966)). A public invitee "'is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the

public,'" whereas a business visitor is "'a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Thompson*, 86 Wn. App. at 284-85 (quoting *McKinnon*, 68 Wn.2d at 650).

Washington uses Restatement (Second) sections 343 and 343A to determine a landowner's liability to invitees. *Iwai v. State*, 129 Wn.2d 84, 93, 915 P.2d 1089 (1996). Under section 343, a landowner may be liable to an invitee if he or she:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger."

*Iwai*, 129 Wn.2d at 93-94 (quoting Restatement (Second) of Torts § 343).

A landlord may be liable to a tenant for any of three potential distinct theories: "the landlord's breach of a duty under (1) the rental agreement, (2) the common law, or (3) the RLTA." *Martini v. Post*, 178 Wn. App. 153, 167, 313 P.3d 473 (2013) (footnote omitted).

B. EXISTENCE OF DUTY

McGee contends that he was a business invitee of the defendants, rather than a tenant in a landlord-tenant relationship, or at least that there is a genuine issue of material fact as to what the legal relationship was. As such, he argues that the defendants owed him a duty of care as the landowners.

In *Mucsi v. Graoch Assoc. Ltd. P'ship No. 12*, 144 Wn.2d 847, 851-52, 31 P.3d 684 (2001), the plaintiff slipped on accumulated snow and ice in a common area of a residential apartment complex. In evaluating the complex owner's duty to the residential tenant who slipped on the snow and ice, the court determined that "[a] residential tenant is an invitee." *Mucsi*, 144 Wn.2d at 855. It then applied the Restatement section 343 duty to business invitees. *Mucsi*, 144 Wn.2d at

4

855-56. The court reasoned that landowners retain responsibility for maintaining common areas in a safe condition. *Mucsi*, 144 Wn.2d at 855.

*Lian v. Stalick*, 106 Wn. App. 811, 821, 25 P.3d 467 (2001), extended *Mucsi*'s reasoning to conclude that the duty a landowner owes to an invitee "applies to portions of the premises under the control of a residential tenant." In *Lian*, a tenant fell on the decrepit steps in front of her unit. 106 Wn. App. at 814. The court considered the duty landlords owe their tenants in common areas, and concluded that, "in appropriate circumstances," those same duties apply to "portions of the premises under the control of a residential tenant," such as the steps in the case. *Lian*, 106 Wn. App. at 820-21.

In *Pruitt v. Savage*, 128 Wn. App. 327, 328, 115 P.3d 1000 (2005), a residential tenant's teenage child was playing in the driveway with a neighbor when the garage door fell, hitting the neighbor child in the head. The neighbor's parents sued the tenants of the house, the landlords, and the property management company. *Pruitt*, 128 Wn. App. at 329. The court considered whether Restatement section 343 would impose liability upon the property manager for injuries caused on the residential rental property. 128 Wn. App. at 330-31. The court determined that section 343 "applies only to one who is a 'possessor of land.'" *Pruitt*, 128 Wn. App. at 331. Therefore, because the landlords could enter the property only with the permission of the tenants, the court concluded that the tenants themselves were the "possessors" of the land and section 343 did not impose any duty on the landlords. *Pruitt*, 128 Wn. App. at 331. The court distinguished situations that concerned the common area owned by the landlord. *Pruitt*, 128 Wn. App. at 331 n.8.

*Curtis v. Lein*, 169 Wn.2d 884, 890, 239 P.3d 1078 (2010), reaffirmed that a tenant is a business invitee. In that case, the owners of a farm were liable under section 343 to tenants who

were living and working on the farm[2] for injuries sustained when a dock onto a pond collapsed. *Curtis*, 169 Wn.2d at 890. That case quoted *Mucsi* for the proposition that: "Reasonable care requires the landowner to inspect for dangerous conditions, followed by such repair, safeguards, or warning as may be reasonably necessary for [a tenant's] protection under the circumstances." *Curtis*, 169 Wn.2d at 890 (quoting *Mucsi*, 144 Wn.2d at 856) (modification in original).

The determinative issue, therefore, is not whether the defendants were McGee's landlords, but who was the "possessor" of the Bryan Avenue property under Restatement section 343. The record indicates that McGee had been living at the property for several weeks at the time of the incident. During that time, however, the defendants hired another person who was "in and out of the house for several days," indicating that they maintained access to the premises despite that McGee was living there, unlike the landlord in *Pruitt*. CP at 49, 128 Wn. App. at 331. The arrangement between McGee and the defendants was much more similar to the arrangement in *Curtis* than that of *Pruitt*. Like the farm in *Curtis*, McGee was living and working on the premises when he was injured. The defendants therefore owed McGee a duty of care under Restatement section 343.

C.    SCOPE OF DUTY AND BREACH

McGee contends that the defendants breached their duty to him as landowners by failing to inspect the premises before he moved in and by failing to make the premises safe while he worked there. He claims that whether the defendants breached their duties is a question of fact that makes this case inappropriate for summary judgment.

A landowner may be liable to an invitee if he or she:

---

[2] The plaintiff in *Curtis* was not actually working on the farm, but lived there with her boyfriend who worked there. 169 Wn.2d at 888. This fact did not change her status as an invitee. *Curtis*, 169 Wn.2d at 890.

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Pruitt*, 128 Wn. App. at 330-31 (quoting Restatement (Second) of Torts § 343).

              i.     Notice

The knowledge requirement of the restatement "requires plaintiffs to show the landowner had actual or constructive notice of the unsafe condition." *Stimus v. Hagstrom*, 88 Wn. App. 286, 295, 944 P.2d 1076 (1997). The notice requirement "attaches only to owners once they have become or should have become aware of a dangerous situation." *Iwai*, 129 Wn.2d at 96-97. To prove constructive notice, "[p]laintiffs carry the burden of showing the specific unsafe condition had 'existed for such time as would have afforded [the defendant] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'"[3] *Iwai*, 129 Wn.2d at 96 (quoting *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 44, 666 P.2d 888 (1983)).

While the defendants would have been required to warn McGee about hazards they knew about, McGee has not claimed that they were aware of the allegedly dangerous condition of the property. Therefore, to prove that the defendants had to remedy or warn him of the hazard, McGee must show that the carpet staples existed for a sufficient time such that the defendants would have had sufficient opportunity to inspect the premises and remove them.

---

[3] There are two exceptions to the notice requirement when either "the unsafe condition is reasonably foreseeable in the nature of the business or the mode of operation" or "the owner caused the hazardous condition." *Stimus*, 88 Wn. App. at 295. McGee has not alleged that either of these exceptions apply in this case.

7

McGee alleges that it was the defendants' duty "to inspect the premises between the time [he] pulled up the carpet and the time he moved in to ensure that the premises were safe." Br. of Appellant at 10. He contends that this gave them "[s]everal weeks" to inspect the premises. Br. of Appellant at 10.

In this case, McGee had superior knowledge over the defendants about the carpet staples. As the defendants' employee responsible for removing the carpeting, McGee himself would have been the most likely source the defendants would have relied on to apprise them of any hazardous condition resulting from carpet staples. It was reasonable for the defendants to assume McGee knew of any dangerous conditions on the premises that he caused. They did not have a duty to conduct an additional inspection in the two weeks between McGee's removal of the carpeting and him moving into the house.

ii. Expertise of Plaintiff

Landowners are generally not liable for dangerous conditions to invitees whom they hired for the purpose of remedying the allegedly dangerous condition when the invitee has superior knowledge of the condition.

In *Stimus*, the plaintiff received injuries while repairing the defendants' patio cover when it collapsed while she stood on it. 88 Wn. App. at 289. The plaintiff claimed that water damage to the house, known to the defendants, partially caused the collapse. *Stimus*, 88 Wn. App. at 289. The plaintiff argued that the defendants had a duty to "warn her of the dangerous condition on the premises and that there [was] an issue of fact as to whether or not the [defendants] had knowledge of the defect and failed to communicate this information to her." *Stimus*, 88 Wn. App. at 292. The issue in the case was "the nature of the duty owing from the [defendants] as the possessors of the

property to [the plaintiff] and her workers as business invitees on the property for the purpose of roofing the [defendants'] house." *Stimus*, 88 Wn. App. at 294.

*Stimus* concluded that "[t]he duty owed by the [defendants] to the roofers . . . must be examined in light of the expectations and knowledge of the parties." 88 Wn. App. at 296. It determined that:

> [T]he roofers were in the position of having superior knowledge concerning the roof and the implications of the [defendants'] statements about dry rot. The duty owed to correct or warn concerning hidden dangers extends only to dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known.

*Stimus*, 88 Wn. App. at 296. It held: "landowners who invite individuals with superior knowledge onto their property to make repairs on the property *should not be required to know of defects the repairs were intended to discover and remedy* or to anticipate defects within the expertise of the experts." *Stimus*, 88 Wn. App. at 296 (emphasis added).

In the present case, McGee attempts to separate the work he did removing the carpeting from the work he returned to the premises to perform several weeks later. He acknowledges that he and his girlfriend removed the carpeting, but alleges that the defendants then had a duty to inspect the premises before he moved in because "there was no reason for [him] to think that he would need to look out for staples that may have been left behind." Br. of Appellant at 10.

Like the roofer in *Stimus*, McGee himself had superior knowledge of the potential danger of carpet staples remaining in the floor after he removed the carpeting. The defendants in this case did not have responsibility to anticipate defects that they reasonably would have expected McGee's work to remedy. In addition, McGee caused the hazardous condition by failing to remove all the

9

carpet staples from the house.[4] The defendants had no duty to know of and remedy a hazard caused by McGee that was his job to remedy.

III.     WISHA

McGee contends that the defendants owed him an additional duty of care as his employer, the owner of the jobsite where he was working, or as general contractors. He claims that the duty to provide him with a safe worksite arose under WISHA. He claims that the defendants breached this duty. He did not raise this cause of action in his complaint and the argument first appears in his response to the defendants' summary judgment motion.

Civil Rule 8(a) requires a complaint for relief to contain: "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." CR 8(a). The complaint must "apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest." *Molloy v. City of Bellevue*, 71 Wn. App. 382, 385, 859 P.2d 613 (1993). A party that does not plead a cause of action or theory of recovery "cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 26, 974 P.2d 847 (1999).

McGee's first amended complaint contains a single cause of action for negligence, but does not mention any violation of WISHA requirements or the parties' respective duties or failures to

---

[4] McGee contends that there is "no evidence to sustain [the defendants'] assertion that the staple that [he] stepped on on December 21 was one that he removed in early November." Br. of Appellant at 11. However at trial, McGee would have the burden of proving that the staple was unrelated to the carpet removal he performed in November. *See Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (holding that, once a party makes its initial burden at the summary judgment stage, "the inquiry shifts to the party with the burden of proof at trial, the plaintiff."). McGee has not suggested any conceivable way that he could have stepped on an unrelated carpet staple at the Bryan Avenue property.

comply with WISHA. Because McGee did not include WISHA in his complaint, he may not first bring it up in response to the defendants' motion for summary judgment. We therefore do not consider his WISHA arguments.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.40, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Bjorgen, C.J.