IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DORI ELLEN CARDON, | ) | |
| | ) | No. 32085-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ESTATE OF JAMES LEROY | ) | |
| BREDESEN, by and through the Estate's | ) | |
| Personal Representative, SUSAN MARIE | ) | UNPUBLISHED OPINION |
| BARNES, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Dori Cardon appeals the trial court's summary judgment

dismissal of her negligence and premises liability claims against the estate of her father,

James Bredesen, arising out of an accident she had at his rural home. She argues that the

affidavits of her expert witnesses on all-terrain vehicle (ATV) operations and human

factors raised genuine issues of material fact that were ignored by the trial court. Because

we conclude that Ms. Cardon's evidence failed to demonstrate genuinely disputed facts

as to critical issues of duty, summary judgment was appropriate. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Dori Cardon moved back to the rural home of her father, James Bredesen, in 2008,

after he was diagnosed with cancer and realized he would need help getting to treatment

and otherwise. She had been living with him for four months when, on a January day, he asked her to use his ATV to drive to his shop and build a fire. He wanted the shop to be warm when he returned from running an errand in town. The route from the home to the shop was down a long driveway that at one point crosses a culvert near a creek. The shoulder on one side of the road had collapsed in the area of the culvert, leaving what Ms. Cardon describes as a "cliff" on that side of the road. Clerk's Papers (CP) at 58. On the January day on which Ms. Cardon drove to the shop to start a fire, snow and ice covered parts of the gravel driveway.

Ms. Cardon had been taught to drive the ATV by her brother in 2007. Since returning to live with her father in 2008, she had driven the ATV many times, including to get the mail and to go to and from the shop.

While driving the ATV toward the shop and approaching the culvert, Ms. Cardon was upshifting from first to second gear when she lost traction. The back of the ATV swung out clockwise. She struggled to steer it back to the road. She was unsuccessful and jumped off as the ATV went into the creek. Her leg was broken in the fall.

Ms. Cardon later learned that her father had engaged the local Honda dealer to modify the ATV to operate in two-wheel drive (2WD) as well as its standard four-wheel drive (4WD), in order to save gas. The selection was made with a small lever. The lever was visible and marked with a sticker reading "2x4," but according to Ms. Cardon the lever and sticker were inconspicuous and she didn't notice them. She does not know

2

whether the lever was set for second or fourth gear on the day of her accident, but claims that if she had been aware of the modification, she would have been sure the ATV was in 4WD.

An instructor in ATV riding and safety, who was later retained by Ms. Cardon as an expert, concluded from her description of the accident that the ATV was probably in 2WD at the time of her accident and that operation in 2WD was probably the cause of the accident.

Mr. Bredesen died in August 2010. In January 2012, three years after the accident, Ms. Cardon sued her father's estate, asserting claims for negligence and premises liability.

After deposing Ms. Cardon and her ATV driving expert, the estate moved in August 2013 for summary judgment, arguing that undisputed facts showed neither a duty on Mr. Bredesen's part or causation.

Ms. Cardon opposed the summary judgment motion with her own affidavit and deposition testimony, and with affidavits from her ATV expert, Steve Lyon, and from Dr. Richard Gill, an expert in "accident reconstruction, human factors, and safety and risk management analyses." CP at 83.

Mr. Lyon testified that he had never seen the type of modification Mr. Bredesen had caused to be made to the ATV. He expressed his opinions that the ATV was in 2WD at the time of the accident and that the 2WD operation caused the ATV to lose control.

3

Dr. Gill testified that the characteristics of the driveway near the culvert created a dangerous latent condition. He also testified that Mr. Bredesen's instruction to Ms. Cardon to use the ATV to drive to the shop and start a fire "likely created transference of authority because [Ms. Cardon] was reasonably relying on her father's knowledge of the ATV and the condition of the premises." CP at 85.

Following a hearing on the estate's motion for summary judgment, the court orally granted it and entered a written order thereafter. Ms. Cardon appeals the trial court's grant of summary judgment.

## ANALYSIS

### *Standard of Review*

We review de novo whether summary judgment was proper, engaging in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). Like the trial court, we view the material evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

"[T]he moving party bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "Once there has been an initial showing of the absence of any genuine issue of material

4

fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues." *Ruffer v. St. Frances Cabrini Hosp. of Seattle*, 56 Wn. App. 625, 628, 784 P.2d 1288 (1990); CR 56(e).

For the first time on appeal, the estate makes specific arguments that some of Ms. Cardon's evidence in opposition to its motion for summary judgment was inadmissible. It argues that she relied upon statements made by Mr. Bredesen that were inadmissible under RCW 5.60.030, otherwise known as the deadman's statute,[1] and that Mr. Lyon's affidavit included legal opinions and other conclusory statements. It argues that it may specifically challenge Ms. Cardon's evidence on appeal without having made a motion to strike or its equivalent in the trial court because we engage in de novo review. It relies on the oft cited holding of *Parkin v. Colocousis*, 53 Wn. App. 649, 769 P.2d 326 (1989).

In *Parkin*, the court recognized the general rule that "to preserve for review a claim that an affidavit is defective, a party must register an objection which specifies the deficiency or must move to strike the affidavit before the trial court's entry of summary

---

[1] RCW 5.60.030 provides, in pertinent part:

[I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person.

5

judgment." *Id.* at 652 (citing *Smith v. Showalter*, 47 Wn. App. 245, 248, 734 P.2d 928 (1987)). As examples of objections to which the rule "clearly applies," *Parkin* identified objections that an affidavit was not made on personal knowledge, does not set forth facts that would be admissible in evidence, or does not show affirmatively that the affiant is competent to testify to the matters stated therein. *Id.*

But *Parkin* held that "the rule requiring objection to the affidavit should not apply in cases where the deficiency in the moving party's affidavit pertains to a lack of proof rather than evidentiary problems." *Id.* The objection in *Parkin* was to conclusions of law contained in a medical expert's affidavit, as to which the appellate court observed, "Neither the trial court nor an appellate court can consider conclusions of law such as were contained in [the doctor's] affidavit." *Id.* at 653. "Because we perform the same function as the trial court and cannot consider conclusions of law contained in affidavits," the court stated, "the fact that Parkin did not argue her objections to the sufficiency of the affidavit at the trial court level makes no difference to her appeal." *Id.*

As in *Parkin*, Mr. Bredesen's estate may challenge conclusory statements and legal opinions offered by Ms. Cardon's expert's opinions in connection with our de novo review even though it did not move to strike them below. We will not consider the

opinions expressed by Mr. Lyon in paragraph 5 of his affidavit, located in the record at CP at 67.[2]

We conclude that objections made for the first time on appeal on the basis of the deadman's statute were waived by the estate in the trial court, however. We have held that protection of the deadman's statute may be waived when the protected party submits evidence concerning a transaction with the deceased in connection with a summary judgment motion as well as at trial. *Hill v. Cox*, 110 Wn. App. 394, 406, 41 P.3d 495 (2002). In its summary judgment briefing the estate relied far less on alleged statements and actions of Mr. Bredesen than did Ms. Cardon. But it did identify the fact that Mr. Bredesen had told Ms. Cardon not to wind the engine out or go over jumps as a "material undisputed fact." CP at 16-17. Because that reliance is enough to operate as a waiver, we need not further analyze whether the deadman's statute is a challenge that could otherwise be raised for the first time on appeal.

### Dismissed General Negligence Claim

The trial court dismissed Ms. Cardon's negligence claims based on its determinations that there is no duty for one licensed adult driver to instruct another as to

---

[2] Mr. Lyon, testified, e.g., that, "[w]hen an owner of an ATV provides his ATV to others to ride, the owner has responsibilities to provide information about the ATV. In my opinion, [Mr. Bredesen] had a duty to tell [Ms. Cardon] important things about the ATV, its use, and also about the property." CP at 67.

how to operate an ATV and that Mr. Bredesen had no duty to warn of a modification that had not made his ATV inherently dangerous.

A plaintiff must prove four elements to prevail on a negligence claim: "(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 144, 875 P.2d 621 (1994).

"The threshold issue in a negligence suit is whether the defendant owed the plaintiff a duty of care, a legal question for the court." *Mita v. Guardsmark, LLC*, 182 Wn. App. 76, 83, 328 P.3d 962 (2014). Generally, "if injury is caused by the *acts* of the defendants (misfeasance), a duty to use reasonable care to avoid injury will be assumed." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 2:2, at 37-38 (4th ed. 2013). Where the injury results from the defendant's *omission* or *failure to act*, on the other hand, the law generally recognizes no liability unless the defendant has assumed the duty of care to protect the plaintiff from harm, or such a duty is imposed by statute. 16 DEWOLF & ALLEN, *supra*, § 2:2, at 38; *Robb v. City of Seattle*, 176 Wn.2d 427, 436-37, 295 P.3d 212 (2013).

Ms. Cardon cites *Alston v. Blythe*, 88 Wn. App. 26, 943 P.2d 692 (1997) as an example of a case in which a defendant truck driver, McKay, might have assumed a duty of reasonable care by waving a pedestrian, Alston, to continue to cross lanes of traffic

without noticing an automobile approaching in the next lane driven by another defendant, Blythe, or warning Alston of Blythe's approach. As the court explained:

> Before he stopped his truck, [McKay] . . . did not owe a duty to help Alston cross the street safely; that was solely her responsibility. Even after he stopped his truck, he still did not owe a duty to help Alston cross the street safely—unless and until he undertook to wave her in front of the truck and across the southbound lanes. If he did that, a jury could find that he assumed a duty to help Alston cross the street; that he was obligated to discharge that duty with reasonable care; and that he failed to exercise reasonable care by not perceiving Blythe, or by failing to warn of Blythe's presence.

88 Wn. App. at 37 (emphasis omitted).

Ms. Cardon asserts that because her father undertook to provide instructions on the ATV's operation, he had a duty to give non-negligent instructions. She also contends that he had a duty to warn her about the modifications to the ATV because those modifications "changed the handling characteristics of the ATV and made the ATV more dangerous to operators." Br. of Appellant at 9.

Ms. Cardon's evidence in support of her negligent driving instruction theory did not include evidence of any *mis*information provided by her father that proximately caused her accident. And by her own admission, her first instruction in driving the ATV was not from her father, but from her brother, in 2007.

Here is her entire description of her father's instruction from her affidavit in opposition to summary judgment:

9

> When I was staying with my father, I rode his ATV periodically and my dad gave me some basic instruction on riding the ATV such as don't wind it out or go over jumps. He also explained that I should not use the right foot brake since it would stick and the brake light would run down the battery. Also, my dad demonstrated operation of the ATV by riding with one knee on the seat.

CP at 55-56. The estate's lawyer established in deposition that Ms. Cardon's description in her affidavit accurately reported the limited extent of her father's instruction:

> Q.      . . . As far as using or driving the quad, did your dad ever give you any specific instructions?
> A.      No, no. Don't wind it out.
> Q.      Okay. Well, that's one.
> A.      Right.
> Q.      So one instruction was, Don't wind it out?
> A.      Right.
> Q.      Any other instructions?
> A.      Don't take it over any jumps.
> Q.      Any other instructions?
> A.      No. Pretty much just don't abuse it, you know.

CP at 64.

As a matter of law, evidence of this "basic" instruction is not evidence from which a reasonable jury could infer that Mr. Bredesen led Ms. Cardon justifiably to conclude that he had told her everything she needed to know in order to safely drive the ATV in all conditions.

Her testimony that her father demonstrated the knee on the seat stance that she used in riding the ATV on the day of the accident is also not evidence of acts or statements by Mr. Bredesen leading Ms. Cardon reasonably to believe that the technique

10

was as safe as riding seated. By her own admission, she had never driven the ATV in the knee on the seat stance until she decided to try it for the first time on the icy January day of the accident because the seat of the ATV was damp and she didn't want to get her jeans wet. The trial court did not err in finding that Mr. Bredesen's limited instruction did not give rise to a duty to warn Ms. Cardon about the conditions and risks that she ended up encountering on the day of her accident.

As to Mr. Bredesen's alleged negligence in failing to warn Ms. Cardon of the modification to the ATV, the trial court concluded that there was no duty to warn because the modification did not result in a dangerous condition. On appeal, Ms. Cardon does not contend that the modification made the ATV dangerous.

She does state in her brief that the modification made the ATV "more dangerous," Br. of Appellant at 1, but she identifies no supporting evidence. The affidavit of Mr. Lyon does not support that proposition. In fact, Mr. Lyon's affidavit stated that "if the ATV had been in 4WD, all four wheels would have been driven forward at the same time and a slide out from the rear, as happened to Dori, would be unlikely." CP at 68. His deposition was consistent. *See* CP at 75 (testifying that if the ATV had been in 4WD, "[i]t would have lunged forward all tires equally. I do not believe it would have caused—it would have went straight forward.") And in deposition, Mr. Lyon testified that he did not believe Mr. Bredesen did anything wrong by having the modification

11

done, agreeing that it was an "appropriate modification." CP at 76. His criticism was that he assumed Mr. Bredesen breached a duty to instruct or warn.

Ms. Cardon has presented no evidence that Mr. Bredesen was aware there was a need to warn his daughter about the modification or that he was aware that the ATV was in 2WD on the January day he asked her to drive to the shop. Ms. Cardon had been driving the ATV for a couple of years by then. She was not only a licensed driver, but had a commercial driver's license (CDL) endorsement. The lever for changing from 2WD to 4WD operation was visible and bore a sticker that said "2x4."

Ms. Cardon's first instruction in driving the ATV had been from her brother, who taught her about shifting the gears and the throttle. CP at 126. She testified in deposition that other family members taught one another about using the ATV:

Q. Each taught each other kind of?
A. Right. Yeah. If you want, I'll give you a ride there, you'll give me a ride back, you know.

*Id.*

There is no evidence that Mr. Bredesen was aware that Ms. Cardon didn't know what the 2x4 lever was for. He might have believed that his son, another family member, or even he, had told her about it. He might have believed that she had seen it and figured out what it was. There is no evidence that on the day he asked Ms. Cardon to start the fire he was aware that despite the snow and ice, the ATV had not been switched back to its standard 4WD mode of operation (assuming, as Ms. Cardon argues, that it had not).

12

Without evidence that Mr. Bredesen knew the ATV might be in 2WD mode and that his daughter was unaware of its dual operation, Ms. Cardon cannot establish any duty to warn. Summary judgment was proper.

*Dismissed Premises Liability Claim*

Turning to Ms. Cardon's premises liability claim, a property owner's legal duty to a person entering his property depends on whether the person is a trespasser, licensee, or invitee. *Mucsi v. Graoch Assocs. Ltd. P'ship.*, 144 Wn.2d 847, 854-55, 31 P.3d 684 (2001); *Younce v. Ferguson*, 106 Wn.2d 658, 666, 724 P.2d 991 (1986). The trial court concluded Ms. Cardon was a social guest, and therefore her status was that of a licensee. Ms. Cardon does not dispute her status as a licensee.[3]

---

[3] While conceding her status as a licensee, Ms. Cardon's briefing argues several legal principles that arise only where a duty as to the condition of land is owed to an invitee. She claims Mr. Bredesen had constructive notice of the allegedly unsafe condition, or alternatively that an exception to the notice requirement applies in this case because he created and maintained the driveway. This is the test applied under § 343 of the *Restatement (Second) of Torts* (1965), which sets forth the duty owed to invitees. *See, e.g., Stimus v. Hagstrom*, 88 Wn. App. 286, 295, 944 P.2d 1076 (1997). She also argues the dangerous condition in this case was not "open and obvious"—an analysis applicable to cases involving invitees. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 135, 875 P.2d 621 (1994) (noting that, while such a duty may apply in limited circumstances with respect to invitees, "a landowner has no duty to warn *licensees* about open and apparent dangers from a natural condition"); *see also* RESTATEMENT, *supra*, § 343A, at 218. These inapplicable principles will not be addressed further.

13

The trial court dismissed Ms. Cardon's premises liability claim because she failed to produce evidence sufficient to show duty or a breach of the standard of care owed to licensees. In *Memel v. Reimer*, 85 Wn.2d 685, 689, 538 P.2d 517 (1975), the court adopted the standard of care for licensees set forth in § 342 of the *Restatement (Second) of Torts* (1965). Under this provision,

> [a] possessor of land is subject to liability for physical harm caused to licensees by a condition on the land *if, but only if,*
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, *and should expect that they will not discover or realize the danger, and*
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, *and*
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

RESTATEMENT (SECOND) OF TORTS § 342, at 210 (1965) (emphasis added). Only if each of these conditions exists does a duty to exercise reasonable care arise. *See Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 835, 906 P.2d 336 (1995); *Dorr v. Big Creek Wood Prods., Inc.*, 84 Wn. App. 420, 427, 927 P.2d 1148 (1996) (applying RESTATEMENT, *supra*, § 341, at 207).

Ms. Cardon argues that Dr. Gill's affidavit raised a genuine issue of material fact as to whether the area of the driveway where the accident occurred was a dangerous latent condition. Dr. Gill's affidavit expressed his opinion that it was, based in part on

the fact that "the long, intact shoulder would tend to mislead a user into believing that the driveway was safe throughout is [sic] entire length." CP at 83. Dr. Gill also noted that a protective guardrail was in place on the opposite side of the driveway, but not on the side with the steep cliff. He concluded that this would likely lead a user of the driveway "to believe that road danger at the culvert area was at the place of the protective barrier, and not on the side where no similar safety device existed" and also "create a false sense of security about the driveway for an ATV rider on the driveway." CP at 84.

This court may assume, as the trial court did in this case, that the driveway was a dangerous condition and it may also assume that Mr. Bredesen was aware of it. But even if we do, Ms. Cardon's showing in support of her theory that her father was liable based on the condition of the land fails at the first condition required for liability: that Mr. Bredesen should have expected that Ms. Cardon would not discover the section of the driveway where the accident occurred or realize its relative danger. Under § 342 of the *Restatement*, an owner of land is liable to licensees for conditions on his land only if he should both realize the risk of harm *and* "expect that the licensee will not discover the condition or, upon discovering it, will not perceive the risk arising from it." *Thompson v. Katzer*, 86 Wn. App. 280, 289, 936 P.2d 421 (1997).

"If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it." RESTATEMENT, *supra*, § 342, cmt. b., at 210. Here, Ms. Cardon was not only an

15

adult, but had superior driving knowledge and skill as evidenced by her CDL endorsement. She was experienced in driving the ATV on the Bredesen property. During the four months she had lived at the home, she helped her father with chores requiring that she drive the length of the driveway, including at least once after winter snows had started.

The reduced duty for the physical condition of land that a landowner owes a licensee (as distinguished from the duty owed an invitee) has been described by the *Restatement* as follows:

> The licensee enters with the understanding that he will take the land as the possessor himself uses it. Therefore such a licensee is entitled to expect only that he will be placed upon an equal footing with the possessor himself by an adequate disclosure of any dangerous conditions that are known to the possessor.

RESTATEMENT, *supra*, § 343, cmt. b, at 216.

Viewing the evidence in the light most favorable to Ms. Cardon, she has failed to present any evidence demonstrating a genuine issue of fact that Mr. Bredesen should have expected that she would not discover the area of the driveway or recognize its relative danger. Summary judgment was again proper.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

16

No. 32085-5-III
*Cardon v. Estate of Bredesen*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.