IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LESLIE GORDON and FRED GORDON, | No. 83487-8-I |
| Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PROVIDENCE HEALTH & SERVICES-WASHINGTON, d/b/a PROVIDENCE REGIONAL MEDICAL CENTER, | |
| Appellant. | |

DÍAZ, J. — Respondent Leslie Gordon (Gordon) slipped and fell on ice in a garage where she parked for work. Appellant asserts that the trial court erred by granting before trial partial summary judgment to respondents as to liability, and by effectively dismissing at trial appellant's comparative fault defense. We agree as to the former argument and need not reach the latter argument. Thus, we reverse the order granting partial summary judgment and remand for a new trial.

## I.     FACTS

On November 21, 2019, two employees slipped on ice which had formed on the pavement of the top level of the Cancer Care Center parking garage of the Providence Health & Services-Washington Medical Center (Providence) in Everett, Washington.

Citations and pin cites are based on the Westlaw online version of the cited material.

Though neither injured themselves, one of these employees notified Providence of the icy conditions by phone by no later than 7:55 a.m. In response, Providence sent security officer Travis Wise (Wise) to the parking garage. Wise went to the parking garage to assess the situation and, "if it was [icy], to warn other people that there was ice down." Wise was instructed to "do [his] best to keep people aware of the danger until Facilities could get up there and put ice melt down." Wise saw ice in sporadic areas, and so, for about 10 to 15 minutes, Wise walked around the whole area, "holler[ed] at" at least three people that there was ice and to be careful, and motioned to vehicles that were coming up to slow down or be careful, as "best [he] could."

At or about that time, Gordon drove up to the top level of the garage, saw Wise, and parked her car for work. At his deposition, Wise testified that he made eye contact with Gordon and made a motion with his arms to try to signal for her to slow down. Although Wise did not audibly say anything to Gordon, he testified that Gordon nodded her head and he thought she had "figured out that it was probably slick out and so she should slow down." Wise testified that, indeed, it appeared she slowed her car down as she went up the ramp.

When Gordon stepped out of her car and shut the door, she immediately slipped on ice and fell. Wise heard Gordon yell and fall. Wise recorded the time of her fall as 8:26 AM. Wise testified that two Providence employees had arrived at nearly the same time to put down rock salt or ice melt. Gordon sustained serious and permanent injuries.

Respondents moved for partial summary judgment, asking the trial court to find that Providence had a duty to warn Gordon of the danger, which it breached based on its failure to audibly warn her about the ice. Clerk's Papers (CP) at 495; CP at 304-05 (in

2

their reply, respondents stipulated that their motion for summary judgment was limited to only the failure to warn, and not a failure to inspect). The superior court granted respondents's motion for partial summary judgment, without holding oral argument and without providing any reasoning for the order.

At trial, the trial judge granted respondents's motion in limine no. 9, which asked the court to bar any mention that Gordon was contributorily negligent or comparatively at fault. The trial judge further granted motion in limine no. 10, which asked the court to limit the witness testimony to preclude any inference that appellant was not wholly and solely liable, and which included the exclusion of substantive testimony about Wise's non-verbal warnings to Gordon and the denial of jury instructions and a verdict form on these issues.

Notably, the jurors asked the trial court whether they could "consider or apportion blame to determine damages? Is that allowed?" The court referred the jury back to its instructions.

The jury returned a verdict for respondents, and awarded Gordon $940,197.52 and her husband $131,340.00.

## II.    ANALYSIS

### A. Applicable Law

We review a trial court's decision on a summary judgment motion de novo, and we "'draw all inferences in favor of the nonmoving party.'" Merceri v. Bank of N.Y. Mellon, 4 Wn. App. 2d 755, 759, 434 P.3d 84 (2018) (quoting U.S. Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc., 104 Wn. App. 823, 830, 16 P.3d 1278 (2001)). "'Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.'" Keck v. Collins, 184 Wn.2d 358, 370,

357 P.3d 1080 (2015) (quoting Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014)). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Id. at 370 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Herron v. KING Broad. Co., 112 Wn.2d 762, 768, 776 P.2d 98 (1989)). "Since the nonmoving party is given the benefit of any factual doubt on a summary judgment motion, it is seldom granted on the basis of the unreasonableness of alleged facts." Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Finally, we may affirm summary judgment on any basis supported by the record regardless of whether the argument was made below. Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

"To prevail on a negligence claim, a plaintiff 'must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" Ehrhart v. King County, 195 Wn.2d 388, 396, 460 P.3d 612 (2020) (quoting N.L. v. Bethel Sch. Dist., 186 Wn.2d 422, 429, 378 P.3d 162 (2016)). The "[e]xistence of a duty is a question of law." Vargas v. Inland Wash., LLC, 194 Wn.2d 720, 730, 452 P.3d 1205 (2019) (quoting Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)). "Breach and proximate cause are generally issues for the trier of fact, but the court may resolve them as a matter of law 'if reasonable minds could not differ.'" Id. at 730 (citation omitted).

"According to premises liability theory, a landowner owes an individual a duty of care based on the individual's status upon the land." Curtis v. Lein, 169 Wn.2d 884, 890, 239 P.3d 1078 (2010) (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 128, 875 P.2d 621 (1994)). The parties do not dispute Gordon's status as an invitee.

4

Our Supreme Court has adopted the view of the Restatement (Second) of Torts § 343 (Am. L. Inst. 1965) as to a landowner's duty of care to an invitee:

> "[A] landowner is subject to liability for harm caused to his tenants by a condition on the land, if the landowner (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to tenants; (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect the tenant against danger."

Curtis, 169 Wn.2d at 890 (alteration in original) (quoting Mucsi v. Graoch Assocs. Ltd. P'ship No. 12, 144 Wn.2d 847, 855, 31 P.3d 684 (2001)).

"In contrast to what a licensee may expect, an invitee 'is . . . entitled to expect that the possessor will exercise reasonable care to make the land safe for his [or her] entry'." Tincani, 124 Wn.2d at 138-39 (alterations in original) (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b). "Reasonable care requires the landowner to inspect for dangerous conditions, 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" Id. at 139 (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b).

Additionally, Restatement (Second) of Torts § 343 cmt. d states:

> An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, *either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein.* Therefore an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of *contributory negligence* in failing to discover a defect, as well as in determining whether the defect is one which the

5

possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor.

(Emphasis added).

"An accumulation of snow or ice is analyzed under the general rules of a landowner's duty to invitees." Mucsi, 144 Wn.2d at 856 (quoting Maynard v. Sisters of Providence, 72 Wn. App. 878, 884, 866 P.2d 1272 (1994)). "This duty extends to the removal of snow and ice and is based upon the tenant's expectation that the premises have been made safe for the tenant's use." Id. (citing Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 53, 914 P.2d 728 (1996)). "Landowners do not become insurers of the safety of those invitees using their parking lots, but they are not absolved of responsibility merely because the injury is caused by accumulations of ice or snow." Maynard, 72 Wn. App. at 884. Finally, "[w]here the hazard is the result of heavy snowfall, the landowner is entitled to reasonable time to alleviate the situation." Mucsi, 144 Wn.2d at 860 (citing Fuller v. Housing Auth., 108 R.I. 770, 770–74, 279 A.2d 438 (1971)).

In short, "[t]o prevail, a plaintiff must prove (1) the landowner had actual or constructive notice of the danger, and (2) the landowner failed *within a reasonable time to exercise sensible care in alleviating the situation*." Id. at 859 (citing Geise v. Lee, 84 Wn.2d 866, 871, 529 P.2d 1054 (1975)) (emphasis added).

B. Application of Law to Facts

Appellant asserts that "the trial court erred in granting partial summary judgment because – viewing the evidence in the light most favorable to Appellant, there are numerous issues of material fact and a reasonable juror could have concluded that Appellant did not breach its duty." Specifically, appellant argues that "a reasonable juror

6

could have concluded that (1) Providence did not have enough time (thirty minutes or less) after being informed of the icy condition; and (2) Providence responded reasonably under the circumstances." As to the former, appellant asserts that "there was not enough time for Mr. Wise to be able to warn the arriving employees." As to the latter, Providence enumerates the actions it did take, and claims "the court must credit all of these actions and draw all reasonable inferences from them."

Respondents assert, and focus almost exclusively on the claim, that, "Providence's duty . . . was to provide [a verbal] warning of the specific condition so that she would appreciate the specific risk involved." Respondents assert that "if a landowner does not make premises safe, it has an additional duty to *at least* give such [verbal] warning to allow invitees to protect themselves."

We agree with Providence as to both of its arguments and reject respondents's constrained view of the law and the proffered facts.

That Providence had notice of the dangerous condition is not seriously disputed. Nor is it disputed that Providence had between 15- and 30-minutes notice before Gordon fell. Nor is it disputed that Providence dispatched employees (a) to assess the situation, (b) to provide warnings as they were able, and (c) to put down rock salt or de-icer, which arrived contemporaneously with Gordon's fall, all of which occurred.

As to the first of Providence's arguments (insufficient time), it is also undisputed that neither Wise nor Gordon saw ice on the top floor before they inspected and slipped on it respectively. Moreover, the other employee who slipped and notified Providence also did not notice the ice before they slipped. Furthermore, Wise testified that "it was really the first cold . . . the first one I had worked where there was ice on parking

7

structures." Indeed, it is undisputed that there had been no frost yet in Everett that year. Finally, it is also undisputed that it had been raining for several days prior to the incident; that the day before the accident, the temperatures recorded in Everett were all above freezing; and that the weather forecast for the day of the accident was for an overnight low temperature of 34 degrees and a daytime high temperature of 48 degrees. In short, a reasonable jury could conclude Providence had absolutely no notice of the anticipated or actual presence of ice until either the reporting employee advised them of the ice or Wise confirmed it. The clock would start then.

These facts stand in great contrast to the facts present in Maynard, where this court reversed summary judgment which was granted in favor of Providence for "obvious and known" icy conditions. Maynard, 72 Wn. App. at 881-83. In Maynard, the record showed that "low temperatures and precipitation had been occurring for the preceding 4 days", "ice and snow were likely to be present and that what was slush when Maynard arrived could turn to ice", and a different "parking lot was sanded between 2 and 3 hours before" the accident. Id. at 883. In short, "Providence was plainly aware of the hazardous condition on the day in question and, anticipating some form of harm, exercised precautions with respect to the staff parking lot but not as to the visitor's lot. This also establishes that Providence had the capacity to take some remedial measures." Id. Thus, this court concluded that it was for the jury to determine Providence's negligence and plaintiff's comparative fault. Id. at 884.

Although the procedural posture and the facts in Maynard are inverted to those here, such cases are instructive and we conclude that it is for a jury to decide whether, with between 15- and 30-minutes notice, Providence had any reasonable "capacity" or

8

time to take any remedial measures. Maynard, 72 Wn. App. at 883; Mucsi, 144 Wn.2d at 863 ("There must be . . . a reasonable time to alleviate the situation.") (citing Iwai v. State, 129 Wn.2d 84, 91, 915 P.2d 1089 (1996)). Stated otherwise, our courts have held that, as a general matter, where the record shows there was ample warning of and time for remedial measures, summary judgment in favor of a potential tortfeasor is inappropriate. In turn, where the record shows there was no warning and minimal time for remedial measures, summary judgment in favor of a potential victim is generally equally inappropriate.

Respondents argue that, because "Providence did in fact provide warnings to the drivers who preceded Ms. Gordon" into the garage, that meant "it had enough time to warn Ms. Gordon." In other words, because Providence "warned some invitees (but not Ms. Gordon) of the dangerous condition," there are no facts to resolve and its failure to do so was some sort of negligence per se. Respondents provide no authority to support such a bright line rule. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (2020) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

As to Providence's second argument (defending the full substance of what remedial measures Providence did take), the ultimate question is whether those measures to alleviate the situation were "sensible." Mucsi, 144 Wn.2d at 859. In Mucsi, our Supreme Court analyzed several cases involving ice or snow where "the opportunity of a landowner to take corrective action" was examined. Id. at 860-861. In Mucsi as in

9

those cases it analyzed, the landowner had several days to take corrective action, but did not. Id. at 862. In Mucsi, the record showed that there was de-icer available, which the landowner did not avail itself of. For these reasons, the court concluded that "there [was] sufficient evidence to proceed to the jury" for a "full trial on the merits." Id.

Again, the conclusion should be the same here although the facts are inverted. Providence did not have several days to remediate all the ice present. Instead, within those 15 to 30 minutes, it – among other actions — dispatched de-icer, which arrived unfortunately seconds too late. Thus, whether there was sufficient time for Providence to do any more than it did should be considered by the jury. Finally, as we concluded in Maynard, "[a] jury must determine whether the defendant was negligent . . . *in light of all the existing circumstances*." Maynard, 72 Wn. App. at 884 (emphasis added). In other words, the jury should also consider whether all of Providence's actions, taken together, or in light of the totality of the evidence, were sensible.

Respondents's entire argument in response rests on a strained reading of Restatement (Second) of Torts § 343 cmts. b and d, which they claim means "if a landowner cannot make the premises safe, it nevertheless has a duty, at the minimum, to give a sufficient [verbal] warning." Br. of Resp't at 19; Report of Proceedings (RP) (November 2, 2021) at 71 ("[Providence] had a duty to repair *and* fix *and* remediate, and they didn't do it.") (emphasis added). In other words, a landowner must entirely make safe every single icy patch and, if not, verbally warn the invitee of each icy patch. This is a misstatement of the law.

The obligation on the landowner is not limited to either fixing the hazard and, if not, warning the invitee. Instead, the law states, "Reasonable care requires the landowner to

inspect for dangerous conditions, 'followed by such repair, *safeguards*, *or* warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" Tincani, 124 Wn.2d at 139 (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b) (emphasis added). We conclude that the "or" is disjunctive, and do not interpret the "or" as an "and," which would impose an additional per se obligation upon a landowner. And we do not ignore the term "safeguards," which is broader than either just fixing or warning.

In turn, there are several questions that a jury should consider on the merits: (a) what were the safeguards Providence took, (b) again, were those safeguards "sensible," and (c) did Providence warn Gordon sufficiently.

As to that final point, respondents assume "moving his arms up and down—did not serve as any warning to the presence of ice on the parking surface." We conclude that it is for the jury to decide whether, given all the circumstances (including Gordon driving by), that handwaving was a reasonable attempt to warn Gordon, or in fact did warn Gordon, assuming as we must that Wise is correct that they "made eye contact" and she understood the meaning of that motion. Indeed, it is a reasonable inference that Wise's waving of his arms was meant to communicate some danger on the road ahead. In turn, a reasonable jury could conclude Gordon, in slowing down, understood that warning, however imperfect it may have been.

Finally, it cannot be the law that, unless the danger resulting from ice or snow is fully remediated, there is always "at least" an "additional" duty to warn. If this were the law, every landowner at every snow or ice storm would need to place a sign or an

employee over every icy patch until every icy patch was fully alleviated, regardless of what other actions the landowner took.  This is not the law of our state.[1]

### III.    CONCLUSION

We reverse and remand for a new trial.

Díaz, J.

WE CONCUR:

Coburn, J.                    Bowman, J.

---

[1] Appellant claims the trial court further erred by effectively dismissing its defense of contributory negligence, even after it claims respondents opened the door.  Because the evidence that will be offered at the new trial will be different than the evidence offered at the prior trial, we need not reach this issue.